**UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
BISMARK DIVISION**

| | |
|---|---|
| MATT SONIA, Individually and For Others Similarly Situated,<br><br>  Plaintiff,<br><br>v.<br><br>PERFORMANCE TRANSPORT, LLC,<br><br>  Defendant. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Matt Sonia ("Sonia") brings this lawsuit to recover unpaid overtime wages and other damages from Defendant Performance Transport, LLC ("Performance") under the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. § 201 *et seq.*

2. Sonia and the Putative Class Members (as defined below) regularly work more than 40 hours a week.

3. But Performance classifies these workers as independent contractors to avoid paying them overtime.

4. Instead, Performance pays these workers the same hourly rate for all hours worked, including those in excess of 40 in a workweek ("straight time for overtime").

5. Sonia brings this collective action to recover unpaid overtime wages and other damages owed to him and other Performance contractors like him.

**JURISDICTION & VENUE**

6. This Court has original subject matter jurisdiction because this case presents a federal question. 29 U.S.C. § 216(b); 28 U.S.C. § 1331.

7. Venue is proper under 28 U.S.C. § 1391(b)(1) because Performance maintains its headquarters in this District.

**PARTIES**

8. Sonia worked for Performance from approximately October 14, 2017 until approximately April 30, 2018. The exact dates and hours that Sonia worked are reflected in Performance's records.

9. Sonia's written consent is attached as Exhibit A.

10. Sonia brings this action on behalf of himself and all other similarly situated hourly contractors, under the collective action provisions of the FLSA (the "FLSA Class"). *See* 29 U.S.C. §216(b). Performance subjected the Putative Class to the same FLSA violations as Sonia, and such a class is properly defined as:

> **All individuals who worked for, or on behalf of, Performance classified as an independent contractor and paid the same hourly rate for all hours worked at any time during the past 3 years** ("Putative Class Members").

11. The Putative Class Members are easily ascertainable from Performance's business and personnel records.

12. Performance is "an award-winning trucking company offering a wide range of transportation and logistics services to the oil and gas industry of the United States."[1]

13. Performance maintains its headquarters in Williston, North Dakota.

14. Performance may be served through its registered agent: **J Bronson Haley, 310 Airport Road, Suite 3000, Williston, North Dakota 58801-2946, USA**.

15. Throughout Sonia's employment, Performance classified him as an independent contractor and paid him and other employees like him the same hourly rate for all hours worked, including those in excess of 40 hours in a single workweek.

---

[1] http://www.performancetransportllc.com/ (last visited July 10, 2019).

**COVERAGE UNDER THE FLSA**

16. At all relevant times, Performance was an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

17. At all relevant times, Performance was an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

18. At all relevant times, Performance was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

19. Performance has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods (such as pipelines, piping, and pressure vessels) or materials that have been moved in or produced for commerce by any person, including but not limited to, drilling rigs, trucks, mobile devices, document scanners, printers, telephones, and other goods or materials that have moved in, or were produced for, commerce.

20. Performance's respective annual gross volume of sales made or business done have far exceeded the minimum ($500,00.00) required for coverage under the FLSA during Performance's existence.

21. At all times hereinafter mentioned, Plaintiff and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

22. Performance uniformly applied its policy of paying its employees, including Sonia, straight time for overtime.

23. Performance applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

24. By classifying its workers as independent contractors and paying them straight time for overtime, Performance violated (and continues to violate) the FLSA's requirement that it pay employees

overtime compensation at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

25. As a result of Performance's policy, Sonia and other employees like him do not receive overtime as required by the FLSA.

26. It is the "straight time for overtime" payment plan that is the "policy that is alleged to violate the FLSA" in this FLSA collective action. *Bursell v. Tommy's Seafood Steakhouse*, No. CIV.A. H-06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006); *Wellman v. Grand Isle Shipyard, Inc.*, No. CIV.A. 14-831, 2014 WL 5810529, at *5 (E.D. La. Nov. 7, 2014) (certifying "straight time for overtime" claim for collective treatment).

**FACTUAL ALLEGATIONS**

27. Performance provides transportation and logistics services to the oil and gas industry.

28. In order to create the goods, and provide the services, it markets to its customers, Performance employs personnel like Sonia and the Putative Class Members.

29. These workers carry out the hands-on, day-to-day production work of Performance.

30. Performance paid Sonia and the Putative Class Members the same sum for each hour worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

31. For example, Sonia worked for Performance from approximately October 14, 2017 until April 30, 2018 as a Field Coordinator and Trainer.

32. Specifically, Sonia primarily worked for Performance in Bossier City, Louisiana and briefly in Wilson, North Dakota.

33. Sonia was paid on an hourly basis.

34. Sonia was not paid on a salary basis.

35. Sonia was not paid a salary guarantee.

36. Performance paid Sonia $25-$35 for each hour worked.

37. Performance typically scheduled Sonia to work 14.5-hour shifts, for as many as 7 days a week.

38. Throughout his entire employment, Sonia regularly worked well in excess of 40 hours in a workweek.

39. But Performance did not pay Sonia overtime.

40. For example, for the pay period beginning on October 16, 2017 and ending on October 31, 2017, Sonia worked for 115.5 hours, but Performance paid him for all of these hours, including those in excess of 40, at the same hourly rate ($25).

| Field Coordinator Invoice 10/16/17-10/31/17 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DATE | TICKET # | DESCRIPTION-WELL SITE NAME | START TIME | END TIME | TOTAL HOURS | Rate | Total | FIELD COORDINATOR |
| 10/16/2017 | 4003 | Scanland | 5:00 | 19:30 | 14:30 | $25.00 | $362.50 | Matt Sonia |
| 10/17/2017 | 4004 | Scanland | 5:00 | 19:30 | 14:30 | $25.00 | $362.50 | Matt Sonia |
| 10/18/2017 | 4005 | Scanland | 5:30 | 19:30 | 14:00 | $25.00 | $350.00 | Matt Sonia |
| 10/19/2017 | 4006 | Scanland | 17:00 | 7:30 | 14:30 | $25.00 | $362.50 | Matt Sonia |
| 10/20/2017 | 4007 | Scanland | 17:00 | 7:30 | 14:30 | $25.00 | $362.50 | Matt Sonia |
| 10/21/2017 | 4008 | Scanland | 17:00 | 7:30 | 14:30 | $25.00 | $362.50 | Matt Sonia |
| 10/22/2017 | 4009 | Scanland | 17:00 | 7:30 | 14:30 | $25.00 | $362.50 | Matt Sonia |
| 10/23/2017 | 4010 | Scanland | 17:00 | 7:30 | 14:30 | $25.00 | $362.50 | Matt Sonia |
| | | | | | 115:30 | | $2,887.50 | |

41. Similarly, for the pay period beginning on December 16, 2017 and ending on December 31, 2017, Sonia worked for 101.5 hours, but Performance paid him for all of these hours, including those in excess of 40, at the same hourly rate ($25).

| Field Coordinator Invoice 12/16/17-12/31/17 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DATE | TICKET # | DESCRIPTION-WELL SITE NAME | START TIME | END TIME | TOTAL HOURS | Rate | Total | FIELD COORDINATOR |
| 12/22/2017 | 4040 | XTO BSI Mountain Hawk | 16:00 | 6:30 | 14:30 | $30.00 | $435.00 | Matt Sonia |
| 12/26/2017 | 4041 | XTO BSI Mountain Hawk | 16:00 | 6:30 | 14:30 | $30.00 | $435.00 | Matt Sonia |
| 12/27/2017 | 4042 | XTO BSI Mountain Hawk | 16:00 | 6:30 | 14:30 | $30.00 | $435.00 | Matt Sonia |
| 12/28/2017 | 4043 | XTO BSI Mountain Hawk | 16:00 | 6:30 | 14:30 | $30.00 | $435.00 | Matt Sonia |
| 12/29/2017 | 4044 | XTO BSI Mountain Hawk | 16:00 | 6:30 | 14:30 | $30.00 | $435.00 | Matt Sonia |
| 12/30/2017 | 4045 | XTO BSI Mountain Hawk | 16:00 | 6:30 | 14:30 | $30.00 | $435.00 | Matt Sonia |
| 12/31/2017 | 4046 | XTO BSI Mountain Hawk | 16:00 | 6:30 | 14:30 | $30.00 | $435.00 | Matt Sonia |
| | | | | | 101:30 | | $3,045.00 | |

42. The work Sonia performed was an essential part of producing Performance's core products and/or services.

43. During Sonia's employment with Performance, Performance exercised control (directly or

jointly through another company) over all aspects of Sonia's job.

44. Sonia did not make any substantial investment in order to perform the work Performance required of him.

45. Performance determined Sonia's opportunity for profit and loss.

46. Sonia's earning opportunity was based on the number of days Performance scheduled him to work.

47. Sonia was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in the same job position) to perform their job duties.

48. Sonia was not employed by Performance on a project-by-project basis, but rather on a consistent basis.

49. While Sonia was classified as an independent contractor, he was regularly on call for Performance and was expected to drop everything and work whenever needed.

50. Performance controlled all the significant or meaningful aspects of the job duties performed by Sonia.

51. Performance controlled the hours and locations Sonia worked, the tools he used, and the rates of pay he received.

52. Even when Sonia worked away from Performance's offices or job sites without the presence of a direct supervisor, Performance still controlled all aspects of Sonia's job activities by enforcing mandatory compliance with Performance's and/or its client's policies and procedures.

53. More often than not, Sonia utilized equipment provided by Performance to perform his job duties.

54. Sonia did not provide the essential equipment he worked with on a daily basis.

55. Performance made the large capital investments in buildings, machines, equipment, tools, and supplies in the business that Sonia worked in.

56. Sonia did not incur operating expenses like rent, payroll, marketing, and insurance.

57. Sonia was economically dependent on Performance during his employment.

58. Performance set Sonia's rates of pay, his work schedule, and prohibited him (formally or practically) from working other jobs for other companies while they were working on jobs for Performance.

59. Very little skill, training, or initiative, in terms of independent business initiative, was required of Sonia to perform his job duties.

60. Indeed, the daily and weekly activities of Sonia and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created or mandated by Performance.

61. Virtually every job function performed by Sonia and the Putative Class Members was pre-determined by Performance and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

62. Sonia and the Putative Class Members were generally prohibited from varying their job duties outside of the pre-determined parameters.

63. Finally, for the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to coordinating transportation and logistics services for oil and gas companies.

64. Sonia performed routine technical job duties that were largely dictated by Performance.

65. For example, Sonia regularly coordinated sand deliveries to Performance's clients' frac locations.

66. All of the Putative Class Members perform the similar job duties and are subjected to the similar policies and procedures which dictate the day-to-day activities performed by each person.

67. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

68. The Putative Class Members regularly worked in excess of 40 hours each week.

69. Like Sonia, the Putative Class Members were generally scheduled for daily shifts of 14.5 (or more) hours for weeks at a time.

70. Performance did not pay Sonia on a salary basis.

71. Performance did not pay the Putative Class Members on a salary basis.

72. Performance paid the Sonia on an hourly basis.

73. Performance paid the Putative Class Members on an hourly basis.

74. Performance failed to pay Sonia overtime for hours worked in excess of 40 hours in a single workweek.

75. Performance failed to pay the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

76. Performance knew, or acted with reckless disregard for whether, Sonia and the Putative Class Members were misclassified as independent contractors.

77. Performance classifies other workers who perform substantially similar work, under similar conditions, as employees.

78. Performance's policy of failing to pay Sonia and the Putative Class Members overtime violates the FLSA because these workers are, for the purposes of the FLSA, employees.

79. Performance's straight time for overtime system violates the FLSA because Sonia and the other straight time for overtime workers classified as independent contractors did not receive proper overtime pay for hours worked over 40 hours each week.

80. Because Sonia and the Putative Class Members were misclassified as independent contractors by Performance, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

80. Because Sonia and the Putative Class Members were misclassified as independent contractors by Performance, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

## FLSA VIOLATIONS

81. Performance violated, and is violating, the FLSA by employing Sonia and the Putative Class Members for workweeks longer than 40 hours without paying them overtime.[2]

82. Performance knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Sonia and the Putative Class Members overtime.

83. Performance's failure to pay overtime to Sonia and the Putative Class Members was not reasonable, nor was the decision not to pay overtime made in good faith.

84. Accordingly, Sonia and the Putative Class Members are entitled to overtime under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorneys' fees and costs.

## COLLECTIVE ACTION ALLEGATIONS

85. The illegal pay practices Performance imposed on Sonia were likewise imposed on the Putative Class Members.

86. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

---

[2] This same conduct violates numerous state laws. Therefore, following some discovery and the opt-in process, Plaintiff may seek leave to add additional claims under state laws.

87. Numerous other individuals who worked with Sonia were classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

88. Based on his experiences and tenure with Performance, Sonia is aware that Performance's illegal practices were imposed on other Putative Class Members.

89. The Putative Class Members were improperly classified as independent contractors and not paid overtime when they worked in excess of 40 hours per week.

90. Performance's failure to pay overtime at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

91. Sonia's experiences are therefore typical of the experiences of the Putative Class Members.

92. The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent class or collective treatment.

93. Sonia has no interests contrary to, or in conflict with, the Putative Class Members.

94. Like each Putative Class Member, Sonia has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

95. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

96. Absent a class and collective action, many members of the Putative Class Members will not obtain redress of their injuries and Performance will reap the unjust benefits of violating the FLSA and applicable state labor law.

97. Furthermore, even if some of the Putative Class Members could afford individual litigation against Performance, it would be unduly burdensome to the judicial system.

98. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members and provide for judicial consistency.

99. The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether Performance employed the members of the Class within the meaning of the applicable state and federal statutes, including the FLSA;

   b. Whether the Putative Class Members were improperly misclassified as independent contractors;

   c. Whether Performance's decision to classify the members of the Class as independent contractors was made in good faith;

   d. Whether Performance's decision to not pay time and a half for overtime to the members of the Class was made in good faith;

   e. Whether Performance's violation of the FLSA was willful; and

   f. Whether Performance's illegal pay practices were applied to the Putative Class Members.

100. Sonia and the Putative Class Members sustained damages arising out of Performance's illegal and uniform employment policy.

101. Sonia knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

102. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

**JURY DEMAND**

103. Sonia demands a trial by jury.

## RELIEF SOUGHT

104. WHEREFORE, Sonia prays for judgment against Performance as follows:

   a. An Order designating the Putative FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b. For an Order appointing Sonia and his counsel to represent the interests of the FLSA Class;

   c. For an Order finding Performance liable to Sonia and the Potential Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

   d. For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

   e. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Andrew W. Dunlap
**Michael A. Josephson**
TX Bar No. 24014780
Federal ID No. 27157
**Andrew W. Dunlap**
TX Bar No. 24078444
Federal ID No. 1093163
**Taylor A. Jones**
TX Bar No. 24107823
Federal ID No. 3348814
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone

713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
tjones@mybackwages.com

**AND**

Richard J. (Rex) Burch
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**